UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ALLEN,

                Plaintiff,          Civil Action No.: 14-11644
                                         Honorable Patrick J. Duggan
                v.            Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 12, 13]

      Plaintiff Thomas Allen appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his application

for Supplemental Security Income ("SSI") under the Social Security Act (the

"Act").  Both parties have filed summary judgment motions, which were

referred to this Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B).  The Court finds that the ALJ's step two conclusions

were proper and the remainder of his analysis is legally sound and

supported by substantial evidence of record.  For these reasons, the Court

**RECOMMENDS** that:

- the Commissioner's motion [R. 13] be GRANTED;

- Allen's motion [R. 12] be DENIED; and,

- the Commissioner's decision be AFFIRMED, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

Allen, a 48-year-old high school graduate, was previously employed as a steel cutter or "slitter". [R. 9-6, Tr. 411]. He allegedly stopped working in August 2004 after suffering three different injuries, including two head injuries and an abdominal laceration. Allen specifically alleges disability as a result of these injuries as well as degenerative disc disease and bipolar disorder. [R. 9-5, Tr. 335, 344; R. 9-6, Tr. 410].

Allen filed an application for SSI on May 30, 2008, alleging disability as of August 2, 2004. [R. 9-5, Tr. 363]. His claim was denied initially on August 5, 2008, and Allen filed a timely request for an administrative hearing. [*Id.*]. Allen originally appeared unrepresented at a hearing before an administrative law judge ("ALJ") in January 2010, and was given time to obtain counsel. [R. 9-2, Tr. 141-52].

After securing counsel, Allen and a medical expert testified at a hearing on November 16, 2010. [*Id.*, Tr. 102-35, 136-40]. In a January 6, 2011 written decision, the ALJ found Allen not disabled. [R. 9-3, Tr. 155-67]. Allen appealed and the Appeals Council remanded the case for further

2

review, directing the ALJ to obtain additional evidence from medical sources, obtain testimony from a vocational expert ("VE"), properly evaluate physician opinions, and give further consideration to Allen's "maximum residual functional capacity." [*Id.*, Tr. 170].

Allen testified at a hearing on June 12, 2012, but the ALJ continued the proceeding after determining there were insufficient records. [*Id.*, Tr. 66-92]. Allen and a VE testified at a subsequent hearing on September 20, 2012. [*Id.* Tr. 36-65]. In an October 23, 2012 decision, the ALJ again found Allen not disabled. [*Id.*, Tr. 17-35]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of the present review. [*Id.*, Tr. 1-4]. Allen filed for judicial review of the final decision on April 25, 2014. [R. 1].

## II.   The ALJ's Application of the Disability Framework

SSI is available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

3

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's RFC, and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*   The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The original ALJ determined that Allen could perform medium work

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 1520(c); 920(c).

that did not involve "complex skills or a great deal of public interaction." [R. 9-3, Tr. 161]. He based his decision in part on the mental RFC generated by consultant Dr. Kriauciunas, the testimony of the medical expert, and a physical RFC generated by a non-medical single decisionmaker, who he mistakenly termed a "physician." [*Id.*, Tr. 163; R. 9-7, Tr. 519-26]. The ALJ determined that, based on this RFC, Allen could not perform his past relevant work, but was nevertheless not disabled pursuant to the Medical-Vocational Guidelines because the non-exertional limitations imposed had "little or no effect on the occupational base of unskilled medium work." [R. 9-3, Tr. 164].

The Appeals Council remanded the case, finding that the ALJ's physical RFC was erroneous, that the ALJ failed to include a sufficient rationale for determining that Allen could perform a limited range of medium work despite severe impairments in his spine and abdomen, and the ALJ needed to augment the record with vocational expert testimony. [*Id.* at 169-70].

On remand, a different ALJ again determined that Allen was not disabled, based on the evidence and testimony. At step one, he found that Allen had not engaged in substantial gainful activity since his alleged onset date. [R. 9-2, Tr. 22]. [*Id.*, Tr. 22]. At step two he identified the following

5

severe impairments: "degenerative disc disease of the lumbar spine; obesity; disorder of the abdomen with residual pain, status post incisional wound in the right upper quadrant; major depressive disorder; and bipolar disorder." [*Id.*, Tr. 23].  The ALJ found Allen's history of a closed head injury, his residual headaches, left thumb ligament strain, GERD and peptic ulcers to be non-severe, stating "there is no medical evidence of record that shows the claimant has any work-related restrictions from these impairments." [*Id.*].

At step three the ALJ determined that none of Allen's impairments, either alone or in combination, met or medically equaled a listed impairment, specifically comparing his impairments with Listings 1.04 (Disorders of the spine) and 12.04 (Affective disorders). [*Id.*].  In making this determination, the ALJ concluded that Allen's mental impairments caused no more than mild restriction in activities of daily living, and moderate difficulties in social functioning and in maintaining concentration, persistence and pace, with no episodes of decompensation. [*Id.*, Tr. 23-24].

Next, the ALJ assessed Allen's RFC, finding him capable of light work with the additional restrictions of lifting or carrying 20 pounds occasionally and 10 pounds frequently; standing and walking up to 6 hours and sitting

6

for 2 hours in a workday; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling; and no concentrated exposure to unprotected heights.  [*Id.*, Tr. 24].  Further, Allen was limited to "simple tasks in a low-stress environment requiring only occasional decision-making and only occasional[ ] changes in the work setting."  [*Id.*]. Based on this RFC, the ALJ determined at step four that Allen could not perform his past relevant work.  [*Id.*, Tr. 28-29].  However, at step five and with the assistance of VE testimony, the ALJ concluded that a hypothetical claimant matching Allen's profile could still perform the representative jobs of hand packager, (12,500 jobs in the region), and small products assembler, (12,500 jobs), and thus Allen was not disabled.  [*Id.*, Tr. 29-30].

## III.   ANALYSIS

### a. Standard of Review

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

7

(6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has

8

been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

After considering Allen's arguments and the standards of review, the Court finds that Allen's motion for summary judgment is without merit.

### b. Step Two Analysis

Allen asserts that the ALJ erred in failing to find that his prior head injuries, migraine headaches, carpal tunnel syndrome, thumb strain and elbow tendonitis were severe. An impairment will be classified as "severe" at step two when it has "more than a minimal effect" on a claimant's ability to perform work. SSR 96-3p, 1996 SSR LEXIS 10, at *3, 1996 WL 374181, at *1 (1996). Once an ALJ has found at least one severe condition, he or she "must consider limitations and restrictions imposed by all of an

9

individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL 374184, at *5 (1996).  Thus, where the ALJ has found one or more severe impairments, the failure to find other conditions severe at step two "could not constitute reversible error," and a reviewing court need not decide whether other conditions should have been found severe.  *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In this case, the ALJ identified several severe impairments, and deciding whether the ALJ should have considered his other conditions severe is not necessary.   *Maziarz*, 837 F.2d at 244.

### c. Episodes of Decompensation

Allen claims the ALJ erred in finding that he suffered from no episodes of decompensation, and cites his five day involuntary impatient admission for slitting his wrist and his unconfirmed reports of two other suicide attempts.  [R. 9-7, Tr. 598-735; R. 9-2 Tr. 87-88].  The Court finds no error.

While Allen's five-day hospitalization was a period of decompensation, the listing requires that he have shown either marked limitations in two areas of mental functioning, or one marked limitation coupled with "repeated episodes of decompensation, each of extended

10

duration." 20 C.F.R. § 404, Appx. 1, 12.04(B).  The regulations define

"extended duration," as lasting "at least 2 weeks", and define "repeated" as

"three episodes within 1 year, or an average of once every 4 months."  20

C.F.R. § 404, Appx. 1, 12.00(C)(4).  Allen's episode does not meet this

definition.  While the regulation also allows ALJ's to "use judgment" to

determine if shorter, more frequent episodes qualify, (*id.*), Allen offers no

evidence to support his testimony that he experienced more than one

episode of decompensation.  Therefore, his argument fails.

### d. GAF Scores

Allen argues that the ALJ failed to properly account for his Global

Assessment of Functioning ("GAF")[3] scores, particularly the  GAF score of

35-40 issued to him upon release from impatient treatment.  [R. 9-7, Tr.

613-14]. The ALJ gave this score little weight, noting that if Allen's GAF

score were really that low "he would require continued hospitalization and

he would not be ready for discharge."  [R. 9-2, Tr. 26].  While the Court

agrees this statement appears speculative and outside of the ALJ's ken,

---

[3] "The GAF scale is a method of considering psychological, social, and
occupational function on a hypothetical continuum of mental health. The
GAF scale ranges from 0 to 100, with serious impairment in functioning at a
score of 50 or below. Scores between 51 and 60 represent moderate
symptoms or a moderate difficulty in social, occupational, or school
functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 461 Fed. Appx.
433, 436 n.1 (6th Cir. 2012) (citations omitted).

the ALJ also reasoned that a GAF score of 51 issued a mere two weeks later suggested that Allen was not as debilitated as the previous GAF score would presume.  [*Id.,* citing R. 9-7, Tr. 495 ].

Further, the Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[es] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006).  Moreover, "a GAF rating is intended to demonstrate an individual's overall mental status at a specific point in time, and is not to be construed as a longitudinal picture of an individual's overall mental functioning." *Stokes v. Comm'r of Soc. Sec.*, No. 1:13-CV-487, 2015 WL 803087, at *15 (W.D. Mich. Feb. 25, 2015).  The ALJ properly considered the effects of Allen's longitudinal mental health treatment, [R. 9-2, Tr. 26-27], and, thus, did not err in giving little weight to the single 31-40 GAF score.

### e. Credibility

Allen takes issue with the ALJ's credibility assessment, arguing that the ALJ erred in finding him noncompliant with recommended treatment. The Court finds no error.  Although credibility determinations of witnesses are within the province of the ALJ, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.  An ALJ must sufficiently explain

12

the bases of credibility determinations.  "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence."  *Id.* at 248.

Here, while Allen testified that he was taking his medication, [R. 9-2, Tr. 43], the ALJ rightly noted that treatment notes contradict this testimony, demonstrating that Allen repeatedly was non-compliant with his medication, often running out and waiting long periods of time to renew his prescriptions.  [*Id.*, Tr. 28].  He intentionally stopped taking his medication due to perceived ridicule and a belief that he could concentrate better without it.  [R. 9-8, Tr. 778, 794, 796, 798].  Further, Allen voluntarily terminated therapy despite his provider's recommendation for the same, because he did not believe it helped and did not like it.  [R. 9-2, Tr. 28; R. 9-7, Tr. 552, 558; R. 9-8, Tr. 777, 837, 843].  While the regulations do require an ALJ to consider a claimant's reasons for failing to seek treatment, (SSR 96-7, 1996 SSR LEXIS 4, at *22-23, 1996 WL 374186 (1996)), Allen has offered no evidence that his failure to comply with his mental health treatment was because symptoms associated with his condition prevented him from doing so.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) (recognizing that noncompliance with

13

treatment may be a symptom of a mental disorder, but finding no evidence in the record to explain gap in treatment).

Of further note, the ALJ relied on other factors to conclude that Allen was only partially credible with respect to his allegations of disability, including his daily activities[4], reports of pulling weeds and playing baseball, and efforts to improve his skills and return to the work force.  [R. 9-2, Tr. 27; R. 9-7, Tr. 577, 585; R. 9-8, Tr. 782].  The ALJ's credibility determination finds support in the record.

### E.    Adequacy of RFC and Hypothetical Question

Allen argues that the ALJ's RFC and hypothetical questions failed to properly account for the effects of his obesity and his hand impairments, resulting in the identification of jobs that Allen would be unable to perform, given his limitations.  The Court disagrees.  There is substantial evidence to support a conclusion that Allen's "carpal tunnel" was not a severe impairment, including the fact that it was never decidedly diagnosed and related medical evidence was limited to a period at least two years prior to the alleged onset date.  [R. 9-8, Tr. 865, 890; R. 9-7, Tr. 584].  Allen's testimony of continued problems is unsupported by any treatment records

---

[4] Allen acknowledged being able to care for his person, and do some simple chores such as making light meals and cleaning up, folding laundry, walk to the store, and caring for the dog.  [R. 9-2, Tr. 44, 56, 114-15, 121].

during the period in question.  An ALJ is only required to incorporate into

the RFC or hypothetical question those limitations he finds credible.  *Casey*

*v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

With regard to his obesity, the Court notes that Allen never alleged

disability as a result of this condition, and there is no testimony or evidence

in the record that obesity limited his ability to work in any way.

Thus, Allen's challenges to his RFC fail.

## IV.   CONCLUSION

The Court finds that the ALJ properly applied the five-step analysis,

and appropriately weighed the evidence and testimony of record, rendering

his conclusion legally sound and supported by substantial evidence.

Therefore, the Court **RECOMMENDS** that Allen's Motion for Summary

Judgment **[R.12]** be **DENIED**, the Commissioner's Motion **[R. 13]** be

**GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 15, 2015

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

15

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
